MIDLAND VALLEY R. CO. v. STATE et al.

No. 15436—Opinion Refiled Jan. 2, 1925.

(Syllabus.)

1. Railroads—Physical Connection Between Lines — Police Power of State — Intrastate Commerce.

Under and by virtue of section 2, art. 9. of the Constitution of Oklahoma, and sections 5483, 3458, and 3459, Comp. Stat. 1921, the state has power and authority to require railroads to provide and maintain physical connections between their roads at points where the same are practicable for intrastate commerce as a proper exercise of its police power, when the public interest can be promoted thereby.

2. Same—Orders of Corporation Commission—Validity.

The "proviso" to par. 17. sec. 402, of the Act of Congress, known as the Transportation act of 1920. (41 Stat. at L. 476), and par. 22 of said section, reserves to the state the right to exercise its police power to require physical connection between railroads in order to interchange intrastate commerce, and the order of the state Cor-

poration Commission, as agent of the state, requiring the same, is binding upon the railroads, except when it is inconsistent with some lawful order of the Interstate Commerce Commission, or when it amounts to an unjust discrimination against or an unreasonable burden upon interstate commerce.

**3. .Corporation Commission—Appeal—Presumption of Reasonableness of Orders.**

Under section 22, art. 9, of the Constitution of Oklahoma, action of the Corporation Commission appealed to the Supreme Court shall be regarded as prima facie, just, reasonable and correct.

**4. Railroads—Physical Connection Between Lines—Order of Corporation Commission Sustained.**

Record examined. and held. that the evidence reasonably supports the finding of the Corporation Commission, that the physical connection between the railroads of the parties hereto, at Fuller, Okla., will promote the public interest, and that the same is necessary and practicable.

From an order of the Corporation Commission, requiring the Midland Valley Railway Company to permit the Oklahoma Union Railway Company to make a physical connection between the railroads of said companies, at Fuller. Okla., the Midland Valley Railway Company appealed. Affirmed.

O. E. Swan, B. B. Blakeney, and Hubert Ambrister, for the appellant.

J. H. Grant, for the appellees.

MASON, J. This is an appeal from an order of the Corporation Commission directing appellant to permit the defendant in error to make physical connection between the railroad lines of said parties, at Fuller, Okla.. for the handling of carload freight for general traffic.

The evidence given before the commission by the complainant in support of its right to such physical connection, in substance, was that the complainant was an electric railway company, with a line of railroad extending from Tulsa, Okla., in a southernly direction, through West Tulsa, Fuller. Sapulpa, and several other places, to Kiefer, Okla., and that said company was engaged in building an extension of said line from Kiefer to Okmulgee, Okla.; that the defendant, hereinafter referred to as the Midland Valley, operates a steam line of railroad from the eastern border of Oklahoma. in a northwesternly direction, through a point only a few miles distant from and connected with Poteau, Okla., by the Kansas City Southern Railway, thence through Muskogee and Tulsa, Okla., to Wichita, Kan.; that a branch line extends from a point on the main line between Muskogee and Tulsa to the town of Kiefer, where there is a physical connection between said road and that of the complainant; that the defendant also has an industrial spur or belt line which runs parallel to the line of the complainant from West Tulsa in a southernly direction for considerable distance, to Fuller, where it intersects the railroad of the complainant.

The evidence also discloses that the Oklahoma Union Railway Company, which has heretofore been engaged in the passenger business only. has now entered into a freight business, and the connection sought is for the purpose of handling carload freight in conjunction with the Midland Valley and other railroads which enter Tulsa; that it has entered into joint freight tariffs and schedules with several of such roads, including the appellant herein, which has been canceled since the filing of this proceeding.

It also appears that the topography of the country along the Oklahoma Union Railroad is adaptable to building up resident communities: that several new towns have sprung up along the line and there is much building activity; that lumber yards, business houses, and industries have been established, including several gasoline plants, or refineries. and two glass plants which manufacture and ship large quantities of their products in carload lots; and it further appears that they desire to use the facilities of the complainant in conjunction with those of the defendant, if said physical connection is made.

The evidence also discloses that there are industries and shippers located between Sapulpa and Kiefer that ship carload freight over the lines of both parties through the physical connection at Kiefer. It appears, however, that most of said industries and shippers located along the line of complainant are located north of Sapulpa and are therefore prevented from using the combined facilities of both parties hereto in the transportation of carload freight, for the reason that the tracks of the Oklahoma Union Railway Company, through the city of Sapulpa, follow the streets of said city. and that it is impossible to take freight cars through the streets.

The evidence also discloses that one of the glass plants above referred to. located at Sapulpa, is owned by a company that also has a plant at Poteau, Okla., and that there

is considerable carload freight shipped back and forth between said plants, and that with a physical connection at Fuller the combined facilities of the parties thereto would furnish a much shorter route between said plants and would save much time in making said shipments.

Evidence was introduced of many other concerns, who requested physical connection as prayed for by complainant, so that they might avail themselves of the combined facilities of both parties. From this evidence, the commission found that the public convenience and necessity required said connection at Fuller, and made the order herein complained of.

For reversal, plaintiff in error makes the following assignments of error; First, that the Corporation Commission is without jurisdiction to make such an order; second, that the order of the commission is unreasonable and is not supported by the evidence.

In discussing the first assignment of error, reference must be made to our Constitution and statutes Section 2, art. 9, of the Constitution of Oklahoma provides as follows:

"Every railroad, oil pipe, car, express, telephone or telegraph corporation or association organized or authorized to do a transportation or transmission business under the laws of this state for such purpose, shall, each, respectively, have the right to construct and operate its line between any points in this state, and as such to connect at the state line with like lines; and every such company shall have the right with its road or line, to intersect, connect with, or cross any railroad or such line."

Under the general heading of "Powers of Railroad Corporations", section 5483, Comp. Stat. 1921, provides as follows:

"Every corporation formed under this article shall have power * * *

"Sixth. To cross, intersect, join, and unite its railroad with any railroad heretofore or hereafter constructed, at any point on its route, and upon the grounds of such railroad corporation, with the necessary turnouts, sidings, and switches, and other conveniences in furtherance of the objects of its connections. And every corporation whose railroad is or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersection and connections and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of the compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascer-

tained and determined in the manner provided by law for the ascertainment and determination of damages for the taking of real property. But no corporation which shall have obtained the right of way and constructed its road at the point of intersection before the application for the appointment of commissioners may be made shall be required to alter the grade or change the location of its road, or be required to bear any part of the expense of making and maintaining such crossings."

Certain powers of the Corporation Commission with reference to physical connections between railroads are conferred by sections 3458, 3459, Comp. Stat. 1921, which provide as follows:

"3458. Every railroad company operating a railroad in this state shall make such physical connections, transfers and switching facilities at all junction points and at all incorporated towns where one or more railroads enter or are included in said town, as may be ordered and directed by the Corporation Commission of this state: Provided, that the Corporation Commission is also hereby authorized, when the public interest can be promoted, to require physical connections between two or more lines of railways, where the same is practicable, regardless of whether the roads cross one another or not."

"3459. The Corporation Commission shall have full power, and it shall be the duty of said commission to investigate all complaints in reference to the physical connections, transfers, depots and switching facilities at all junction points and incorporated towns, villages and communities, and upon investigation of such complaint or upon its own motion, the said commission may require any railroad companies to make such physical connections or to establish and maintain union depots transfer and switching facilities as the public interests may require; Provided, however, that the Corporation Commission may make its order requiring such physical connections, transfer and switching facilities in any incorporated town on condition that such necessary additions, rights of way therefor be furnished the railroad company making such physical connections free, or at such reasonable cost as in the judgment of the commission may be fair and reasonable to the people and such companies." -

It will therefore be observed that, unless this order is in conflict with federal legislation, it is the duty of railway companies to permit, and the Corporation Commission has jurisdiction to enforce physical connections between two railway lines at junction points and other places in this state, wherein same is practicable, and wherein public interest can be promoted. It has been held by the Supreme Court of the

United States that similar statutes applied in a proper case are not in violation of the rights secured by the Constitution. Michigan Central Railway Co. v. Michigan Railroad Commission, 56 L. Ed. 750; Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 287, 45 L. Ed. 194.

It is next urged that the Act of Congress of 1920 (41 Stat. at L. 476) deprives the Corporation Commission of jurisdiction to make such an order as herein complained of, and in support of this contention counsel cite Railroad Commission of California v. Southern Pacific Co., 68 L. Ed. 455.

In that case the Railroad Commission of California made an order requiring all railroads entering the city of Los Angeles to co-operate and participate in the erection and maintenance of a union depot. It also required some of the railway companies to abandon several miles of main line tracks, and to construct several miles of new main line tracks, much of which was to be elevated, as well as to abandon existing terminals. On appeal of said order, the Supreme Court of the United States held that the Railroad Commission of California was without jurisdiction to make such an order, the syllabus in said case being as follows:

"Authority over the establishment by railroad companies of union stations in cities by a new construction involving extension of main lines and abandonment of main tracks and terminals is vested in the Interstate Commerce Commission to the exclusion of State Commissions by the provisions of section 402 of the Transportation Act, that no interstate carrier shall undertake the extension of its line, or abandon all or any portion of it without a certificate by the Interstate Commerce Commission of public convenience."

This opinion appears to have been based upon that portion of section 402 (pars. 18 to 21, inclusive) of the Transportation Act of 1920, which provides that no railroad company subject to said act shall undertake the extension or abandonment of its line or any part thereof unless and until a certificate shall be obtained from the Interstate Commerce Commission that the public convenience and necessity require the same. No contention was made that such certificate had been obtained before the Railroad Commission made its order.

We are of the opinion that neither the case cited by the appellant (Railroad Commission of California v. Southern Pacific Company, supra) nor the Transportation Act of 1920 is applicable to the case at bar. We are confirmed in this by paragraph 22, which immediately follows the paragraphs above referred to, and which provides as follows:

"The authority of the (Interstate Commerce) Commission conferred by paragraphs 18 to 21, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one state, or of street, suburban or interurban electric railways which are not operated as a part or parts of a general steam railroad system of transportation."

This view is also supported by the Los Angeles Union Depot case, in the body of the opinion, wherein the following language is used:

"It may well be that a mere relocation of a main track of an interstate carrier which does not involve a real addition to, or abandonment of, main tracks and terminals, or a substantial change in terminals, or a substantial change in destination, does not come within paragraphs 18 to 21. One might, too, readily conceive of railroad crossings or connections of interstate carriers in which the exercise by a state commission of the power to direct the construction of merely local union stations or terminals without extensions of main tracks and substantial capital outlay should be regarded as an ordinary exercise of the police power of the state for the public convenience, and would not trench upon the power and supervision of the Interstate Commerce Commission in securing proper regulation of an interchange of interstate traffic or passengers Only a lawful order of the Interstate Commerce Commission would raise a question of the power of a state commission in such cases, as the proviso of par. 17, sec. 402, of the Transportation Act, shows:

"That nothing in this act shall impair or affect the right of a state, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the commission made under the provisions of this act."

We are of the opinion that, under and by virtue of the proviso to paragraph 17 and paragraph 22 of section 402, of the Transportation Act, the state of Oklahoma, through the Corporation Commission, by virtue of the state Constitution and statutes, has power and authority in the exercise of its police power to require railways, engaged in interstate and intrastate commerce, to provide physical connection between their roads when the public necessity may require. Such jurisdiction was not withdrawn by the Transportation Act, but, on the other hand, was unimpaired by the

proviso to paragraph 17 and paragraph 22 of section 402 of said act. Such order, of course, could not be binding upon said railroads if it were inconsistent with some lawful order of the Interstate Commerce Commission, or if it amounted to an unjust discrimination against interstate commerce, or if it amounted to an unjust or unreasonable burden thereon, but, in our opinion, the case at bar does not come within any of such exceptions.

Under the second assignment of error, appellant objects to the order of the Corporation Commission because the order was made before the testimony had been transcribed. This objection is without merit. The complaint was heard by a majority of the members of the commission and the order complained of was signed by such members, and no transcript of testimony was necessary except for the purpose of perfecting the appeal.

It is next contended that the record, as a whole, shows that there is no necessity for a physical connection between the railroads of the parties hereto, and that the order is therefore unreasonable and void. With this contention, we cannot agree.

We have examined the entire record in this case, and the evidence reasonably supports the findings of the Corporation Commission, that a physical connection between the railroads of the parties hereto, at Fuller, Okla., will promote the public interest, and that the same is necessary and practicable. In addition to this, section 22, art. 9, of the Constitution of Oklahoma provides that the action of the Corporation Commission appealed from shall be regarded as prima facie, just, reasonable and correct.

For the reasons stated, the judgment of the Corporation Commission is affirmed.

All the Justices concur except McNEILL, C. J., and HARRISON, J., absent.